Nathan A. Thompson, OSB #184601
Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, Oregon 97209
Phone: (503)802-5545
Fax: (503)802-5351
Email: nathan.thompson@immixlaw.com

Attorney for Creditor 856 Brewing
Company, LLC as successor to the original
claim filer Crux Fermentation Project, LLC

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re:<br><br>Dairy Building, LLC,<br><br>Debtor and Movant. | Case No. 25-34175-dwh11<br><br>**CREDITOR'S OBJECTION TO NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY, COMPENSATE REAL ESTATE BROKER, AND/OR PAY ANY SECURED CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING** |

**TO: THE HONORABLE DAVID W. HERCHER
UNITED STATES BANKRUPTCY JUDGE**

Creditor, 856 Brewing Company, LLC ("Creditor"), as transferee of the claim originally filed by its wholly owned subsidiary, Crux Fermentation Project, LLC ("Crux"), hereby objects to the Movant's Motion for Authority to Sell Property Free and Clear of Liens as detailed in that certain Notice of Intent to Sell Real or Personal Property, Compensate Real Estate Broker, and/or Pay Any Secured Creditor's Fees and Costs (the "Notice"). Specifically, Creditor objects to the details and assertions in Paragraph 6 of the Supplement to the Notice regarding the Lease Agreement by and between Crux and Debtor, dated as of February 2, 2023 ("Lease"), as being inconsistent with the facts and circumstances existing and objects to the

proposed assumption and assignment of the Lease to the "Purchaser" (as defined in the Purchase and Sale Agreement addended to the Notice).

More specifically, as the Debtor has submitted, "*that it is not in default under the Dairy Building Leases and therefore does not need to cure any defaults under the Dairy Building Leases pursuant to 11 U.S.C. § 365(b)(1)*", this statement is inconsistent with the pre-petition default by Debtor in failing to return Crux's $50,000.00 additional deposit (the "Additional Deposit") which Crux funded pursuant to the First Amendment to Lease Agreement by and between Crux and Debtor, dated on or about May 8, 2025 ("Amendment"). As the Amendment detailed, Crux was meant to fund the Additional Deposit to *temporarily* act as additional collateral required by Debtor for any potential unpaid obligations of Crux, only during such time as Crux required to locate a suitable and approved subtenant for its space in the Dairy Building. Crux thereafter executed a sublease approved by Debtor with Bluebird Bakers in September of 2025. As the Amendment included, "*[r]epayment of the Additional Security Deposit from Landlord to Tenant shall be made within ten (10) days of the execution of the sublease*". Under the Amendment, Debtor was explicitly precluded from drawing upon the Additional Deposit for any other purpose aside from restoration of the original security deposit funded by Crux, and even then, only if such original security deposit was not restored to its full amount within ten days of written demand by Debtor during the time Crux sought a subtenant. No such demand was ever made by Debtor, as Crux remained current with its obligations under the Lease during the intended time of the Additional Deposit's utility. Despite Crux's requests for return of its Additional Deposit following execution of the sublease, Debtor refused to do so, as by inference the Additional Deposit had been misappropriated to pay other obligations of Debtor. As this obligation to return Crux's Additional Deposit was triggered in September of 2025 and Debtor filed its bankruptcy petition in December of 2025, the failure of Debtor to do so is rightfully a pre-petition default under the Lease and its relevant Amendment.



Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

To be clear, Creditor has no interest in materially delaying or frustrating the bankruptcy proceeding, including the sale of the property to the intended Purchaser. However, as currently indicated by the Notice, there appears to be no clear indication of any recourse or assurances that may be forthcoming to Creditor related to the $50,000.00 pre-petition default of Debtor (to the contrary at the indicated sale price and flow of proceeds it appears Creditor's claim stands to be entirely extinguished with no recourse at all). The Notice provides no awareness of whether the Additional Deposit that was meant to be returned in September of 2025 is errantly included in the $134,425.77 amount of estimated tenant security deposits that are meant to be transferred to the Purchaser. The Notice incorrectly lists Crux Fermentation Project, LLC as currently being the tenant under the Lease, even though notice of assignment of the Lease to Creditor as an entity controlling Crux as tenant (as permitted under the Lease), was provided to Debtor on December 10, 2025. All of these aspects warrant clarification before any motion is approved or any sale, assumption, and transfer proceeds. If the applicable bankruptcy code provisions require cure of pre-petition defaults prior to any proposed assignment to Purchaser, Creditor's claim should not be extinguished, and this Lease should not be assigned to the Purchaser without due consideration of this objection. Creditor, like Debtor, is facing financial turmoil ongoing and transfer of this Lease to be fully enforced on its terms (despite the loss of $50,000.00 rightfully owed to Creditor on account of the Lease) would not be to the ultimate benefit of Creditor or Purchaser, and would reward Debtor for its wrongful actions. If rejection of Creditor's Lease is a possibility, even if requiring forfeiture of the Additional Deposit claim of Creditor, that would likely be the best possible outcome for the parties in interest moving forward. The Court should decline to enter the motion submitted by Debtor as currently proposed and drafted, and Creditor respectfully requests that the Court consider remedies that may be available to satisfy Debtor's pre-petition default to Creditor, or in the preferred alternative, to allow rejection of the Lease and for the Lease to be terminated in full prior to the Debtor and Purchaser's transaction closing.



Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

DATED this 3rd day of June, 2026.

IMMIX LAW GROUP PC

Signed by:
Nathan Thompson
1AED2C6E3926473...

By:______________________________
Nathan A. Thompson OSB #184601
Attorney for Creditor

Attachment: First Amendment to Lease Agreement



Immix Law Group PC
600 NW Naito Parkway, Suite G
Portland, OR 97209
Telephone: 503-802-5533
Facsimile: 503-802-5351

# First Amendment to Lease Agreement

This First Amendment to Lease Agreement (this "Amendment") is made as of May __, 2025, between Dairy Building, LLC, an Oregon limited liability company ("Landlord"), and Crux Fermentaton Project, LLC, an Oregon limited liability company ("Tenant").

## RECITALS

A. Landlord and Tenant executed that certain Lease Agreement dated February 2, 2023, (the "Lease"), for the Premises located at 2715 SE 8th Avenue, Suite 175, Portland, OR 97202, which Premises is more particularly described in the Lease.

B. Tenant subsequently has determined it is in its best interest to vacate the Premises, discontinue active business operations at the Premises, and to seek a subtenant (subject to the terms of Section 23 of the Lease and this Amendment) for the Premises, as negotiated with Landlord.

C. In furtherance of the intent of the foregoing recital, Landlord and Tenant desire to modify and amend the Lease all as more particularly set forth in this Amendment.

## AGREEMENT

In consideration of the mutual covenants and conditions contained herein and for other good and valuable consideration, Landlord and Tenant agree as follows:

1. **Amendment of Lease**

1.1. **Additional Security Deposit and Collateral for Vacation of Premises.** Per the original terms of the Lease, Tenant has delivered to Landlord a security deposit in the amount of $10,772.51 (the "Initial Security Deposit"), which the parties agree has been delivered and is currently held by Landlord as detailed in the Lease. In consideration of, and collateral for, Landlord's allowance of Tenant to vacate the Premises during the Term of the Lease and to discontinue operations of Tenant's business thereon while seeking a subtenant, Tenant hereby agrees to deliver to Landlord an additional security deposit in the amount of $150,000.00 (the "Additional Security Deposit"). Such Additional Security Deposit is to be used by Landlord in the event that Tenant fails to pay any "Rent" (as defined in the Lease) when such Rent becomes due or for the payment of other rightful fees and expenses due to Landlord under the Lease, subject to the following provisions. Landlord *shall not* be entitled to draw on the funds constituting the Additional Security Deposit, unless and until the Initial Security Deposit (or any partial amount thereof) has been depleted per the terms of the Lease and not otherwise restored by Tenant within ten (10) days after written demand therefor as detailed in Section 6 of the Lease. In such case, Landlord may draw on the

Additional Security Deposit only for such purpose and only to the extent required to replenish the Initial Security Deposit to its full intended amount. Tenant agrees to restore any depleted amount of the Additional Security Deposit as properly drawn by Landlord in accordance with this Amendment within ten (10) days of written demand therefor. The Additional Security Deposit shall be held in an account of Landlord's choosing and Landlord shall be entitled to any interest accrued on such sum.

1.2. **Agreement with Subtenant; Return of Additional Deposit**. Landlord and Tenant agree that there shall be no stipulated timeframe for Tenant to reach an agreement for a suitable sublease with a subtenant, both sublease and subtenant meeting the requirements of Section 23 of the Lease. However, Tenant agrees to use ongoing commercially reasonable efforts to locate a subtenant and to agree to the terms of a sublease with such subtenant meeting the criteria defined in the Lease. Nothing in this Amendment is intended to limit or alter Landlord's approval rights related to the intended sublease and/or subtenant as further defined in the Lease. Notwithstanding the foregoing, Landlord agrees to use reasonable discretion and to make good faith efforts to cooperate with Tenant in considering subtenants proposed by Tenant and to do so within a commercially reasonable timeframe, without undue delay, and/or as specified in the Lease. Tenant understands that any subletting of the Lease shall not relieve Tenant of liability under the Lease, except in the event that Landlord decides to exercise its right to acquire Tenant's interest in such sublease. Upon the valid and mutual execution of a sublease between Tenant and an approved subtenant, the Additional Security Deposit shall revert and be repaid to Tenant in full, minus any unpaid amounts required to restore the Initial Security Deposit as detailed in Section 1.1 of this Amendment or other charges rightfully due to Landlord that are not adequately satisfied by the amount of the Initial Security Deposit. Repayment of the Additional Security Deposit from Landlord to Tenant shall be made within ten (10) days of the execution of the sublease.

1.3. **Waivers**. To the extent that any provision of the Lease is or would be violated by the intended agreement of the parties contained in this Amendment or the actions contemplated hereby, such provision or action shall not constitute a breach of the Lease by Tenant. This includes, but is not limited to, any potential breach associated with Tenant's vacation of the Premises or lack of operations at the Premises, including the lack of any "Percentage Rent" payable and attributable to "Gross Sales" above the "Break Point" (such terms as defined in the Lease).

2. **Representations and Warranties**

Each of Tenant and Landlord represent and warrant to the other that:

2.1. **Due Authorization**. Such party has full power and authority to enter into this Amendment without the consent of any other person or entity;

2.2. **No Assignment**. Such party has not assigned its interest in the Lease;

2.3. **No Default**. Such party is not in default of the Lease, as altered by this Amendment;

2.4. **Binding Effect**. The Lease is binding on such party and is in full force and effect; and

2.5. **Real Estate Brokers**. There is no real estate broker or agent who is or may be entitled to any commission or finder's fee in connection with the representation of such party with regard to this Amendment, and such party will indemnify and hold the other harmless from and against any and all claims, demands, losses, liabilities, lawsuits, judgments, costs and expenses (including without limitation, attorneys' fees and costs) with respect to any leasing commission or equivalent compensation alleged to be owing on account of such party's discussions, negotiations, or dealings with any real estate broker or agent.

3. **General Provisions**

3.1. **Attorneys' Fees**. If a suit or an action is instituted in connection with any dispute arising out of this Amendment or the Lease or to enforce any rights hereunder or thereunder, the prevailing party will be entitled to recover the costs and attorneys' fees reasonably incurred in connection with the claim.

3.2. **Counterparts; Facsimile and Scanned Email Signatures**. This Amendment may be executed in counterparts and when each party has signed and delivered at least one such executed counterpart to the other party, then each such counterpart will be deemed an original, and, when taken together with the other signed counterpart, will constitute one agreement which will be binding upon and effective as to all signatory parties. Facsimile and scanned e-mail signatures will operate as originals for all purposes under this Amendment.

3.3. **Effect of Amendment**. The Lease is unmodified except as expressly set forth in this Amendment. Except for the modifications to the Lease set forth in this Amendment, the Lease remains in full force and effect. To the extent any provision of the Lease conflicts with or is in any way inconsistent with this Amendment, the Lease is deemed to conform to the terms and provisions of this Amendment. Terms used in this Amendment will have the meanings given to them in the Lease, except as specifically provided in this Amendment.

3.4. **Binding Effect**. The provisions of this Amendment will be binding upon and inure to the benefit of the parties and their respective successors and assigns. No

amendment, modification or supplement to this Amendment will be binding upon the parties unless in writing and executed by Landlord and Tenant. This Amendment will become effective and binding only upon execution and delivery hereof by Landlord and Tenant. No act or omission of any officer, employee or agent of Landlord or Tenant will alter, change, or modify any of the provisions hereof.

3.5. **Integration**. This Amendment, including the Lease, contains the entire agreement and understanding of the parties with respect to the matters described herein, and supersedes all prior and contemporaneous agreements between them with respect to such matters.

[*Signatures on following page*.]

IN WITNESS WHEREOF, Landlord and Tenant have executed this Amendment as of the date first above written.

TENANT: Crux Fermentation Project, LLC, an Oregon limited liability company

DocuSigned by:
By: Cam O'Connor
C97BC919A10F4C8...
Name: Cam O'Connor
Title: Managing Director/Brewmaster

LANDLORD: Dairy Building, LLC, an Oregon limited liability company

DocuSigned by:
By: [signature]
839F063E4752441...
Name: Mike Tevis
Title: Manager

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

**Dairy Building, LLC**
Debtor

Case No. **25-34175-dwh11**

**CERTIFICATE OF SERVICE OF**

**Creditor's Objection to Notice and Motion**
[*Enter name of document served*]

[*Instructions to filer: For any document for which service on other parties is required, complete this certificate of service and include with the document when filing with the court. See FAQ 31 on the court's website for information on service of motions and chapter 12 or 13 plans.*]

I, **Nathan A. Thompson, Attorney for Creditor 856 Brewing Company, LLC (Crux)** [*enter name and role in the case*], certify that, on **06/03/2026** [*enter date*], I served copies of **Creditor's Objection to Notice of Intent to Sell Real or Personal Property...; Motion for Authority to Sell Property Free and Clear of Liens** [*enter description of the document (for example, "motion for contempt as to creditor ABC Corp.")*] on the following entities in the manners provided [*enter name of each entity served followed by how the document was served on that entity (for example, "U.S. trustee by mail to 1220 SW 3rd Ave #315, Portland, OR 97204")—if more room is required to list each entity, attach an additional page*]:

**Dairy Building, LLC by mail to c/o Meritus Property Group, 1111 NE Flanders St #206, Portland, OR 97232**

**and**

**Sussman Shank LLP by mail to c/o Douglas R. Ricks, 1000 SW Broadway St, Portland, OR 97205**

Signed by:
Nathan Thompson
1AED2C6E3926473...

**06/03/2026**

Signature — Date

**Nathan Thompson**
Print or Type Name

**Immix Law Group PC, 600 NW Naito Parkway Ste G, Portland, OR 97209**
Address